UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DANIEL PAUGSTAT<br>6027 Ricky Dr.<br>Fairfield, OH 45014<br><br>*On behalf of himself and all others similarly situated,*<br><br>    Plaintiff,<br><br> *v.*<br><br>PEPPERIDGE FARM, INCORPORATED<br>c/o Ohio Statutory Agent<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>    Defendant. | CASE NO.<br><br>JUDGE<br><br>**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>(Jury Demand Endorse Herein) |

Plaintiff Daniel Paugstat, by and through counsel, for his Class and Collective Action Complaint against Defendant Pepperidge Farm, Incorporated (hereinafter referred to as "Defendant" or "Pepperidge Farm"), states and alleges the following:

**INTRODUCTION**

1. Plaintiff brings this case to challenge the policies and practices of Defendant Pepperidge Farm that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Constitution and statutes of the State of Ohio. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective"). Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert factually-

related claims under the Constitution of the State of Ohio, Ohio Const. Art. II, Sec. 34a, and Ohio's wage-and-hour statutes, O.R.C. Chapter 4111 (the "Ohio Class").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over Plaintiff's claims under the Constitution and statutes of the State of Ohio because those claims are so related to the FLSA claims as to form part of the same case or controversy.

4. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

5. At all times relevant, Plaintiff Daniel Paugstat was a citizen of the United States and a resident of Butler County, Ohio.

6. Defendant Pepperidge Farm is a Connecticut for-profit corporation with its principal place of business at 595 Westport Ave., Norwalk, CT, 06851.[1] According to records maintained by the Ohio Secretary of State, Defendant's Ohio Statutory Agent for service of process is CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.[2]

---

[1] https://www.pepperidgefarm.com/contact-us/ (accessed June 6, 2020).
[2] https://businesssearch.ohiosos.gov?=businessDetails/294793 (accessed June 6, 2020).

## FACTUAL ALLEGATIONS

### Defendant's Business

7. Pepperidge Farm manufactures, markets, and distributes bakery and biscuit products, including cookies and crackers, across the United States, including in Ohio.

### Defendant's Status as Employer

8. At all times relevant, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), Ohio Const. Art. II, Sec. 34a and O.R.C. Chapter 4111, and employed non-exempt hourly employees, including Plaintiff and other members of the FLSA Collective and Ohio Class.

9. At all times relevant, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

10. At all times relevant, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

11. Defendant operates and controls an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

### Plaintiff's, the FLSA Collective's, and Ohio Class's Non-Exempt Employment Statuses with Defendant

12. Plaintiff has been employed by Defendant from approximately March 2007 to the present as a Sales Development Associate.

13. At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees within the meaning of 29 U.S.C. § 203(e), Ohio Const. Art. II, Sec. 34a and O.R.C. §§ 4111.01, *et seq*.

14. At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**Pepperidge Farm's Misclassification of Sales Development Associates as Independent Contractors**

15. Pepperidge Farm, in violation of the FLSA and Ohio law, classifies its Sales Development Associates as so-called "independent contractors." Through this misclassification, Defendant knowingly, willfully, and deliberately fails to compensate Plaintiff and other members of the FLSA Collective and Ohio Class overtime compensation of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

16. In fact, Plaintiff and Defendant's other Sale Development Associates are employees of Defendant according to the standards applicable under the FLSA and Ohio law and are entitled to overtime compensation.

17. Sales Development Associates stock product displays, deliver product to stores, and merchandise and promote Pepperidge Farm products. They provide this service at grocery stores, convenience stores, and other locations, including military bases..

18. Defendant has a high degree of control over the manner in which Sales Development Associates perform their job duties. Sales Development Associates depend solely on Pepperidge Farm for the work they perform.

19. Pepperidge Farm requires Sales Development Associates to work, within defined territories, under standard form Consignment Agreements.

20. Pursuant to the Consignment Agreements, Sales Development Associates must keep a fresh supply of Consigned Product (i.e., bakery and biscuit products) in all retail stores in

the territory "owned" by the Associate. Further, Sales Development Associates must realize the full sales potential in their assigned territories, including active solicitation of retail stores.

21. Under the Consignment Agreements, Pepperidge Farm may establish sales and distribution goals Sales Development Associates must meet, and Associates are prohibited from distributing other products to the extent that it interferes with Pepperidge Farm work activities, which take up fifty (50) to seventy (70) hours per week.

22. Sales Development Associates do not exert control over any meaningful part of Defendant's business operations and do not stand as a separate economic entity from Defendant. Defendant exercises control over all aspects of the employment relationship with Sales Development Associates.

23. Defendant controls the work their Sales Development Associates perform and the manner in which they perform their duties.

24. Sales Development Associates must report to a Pepperidge Farm location certain mornings each week where they are provided with the products they must deliver to each store.

25. Sales Development Associates must stock shelves and ensure correct product placement. Major retailers create "plan-o-grams" which show precisely how Associates must display Pepperidge Farm products.

26. Sales Development Associates' opportunities for profit or loss are established by Defendant.

27. Sales Development Associates cannot modify their commission percentage amount in order to maximize their profit. Sales Development Associates cannot renegotiate compensation throughout the employment relationship with Pepperidge Farm or Pepperidge Farm's delivery customers.

28. Defendant requires Plaintiff and other members of the FLSA Collective and Ohio Class to perform their duties under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendant. Sales Development Associates are not permitted to charge different prices based on other factors, such as their work experience, demand, or availability outside Pepperidge Farm.

29. As a matter of economic reality, Defendant's Sales Development Associates are economically dependent on Defendant.

30. Sales Development Associates work for Defendant and are not in business for themselves.

31. Defendant's Sales Development Associates perform work that is integral to Defendant's primary, regular business of the operation of Pepperidge Farm. Defendant is in the business of providing bakery and biscuit product to customers nationwide. Pepperidge Farm's "primary purpose" is in fact to provide delivery of these products to client stores and commissaries.

32. Defendant has knowledge of hours worked and duties performed by Plaintiff and other members of the FLSA Collective and Ohio Class.

33. As above, Sales Development Associates are entirely dependent upon Pepperidge Farm to perform their job duties.

34. Defendant has a far more significant role than Sales Development Associates in drawing customers to Pepperidge Farm's snack and baked goods.

35. Sales Development Associates work full time for Defendant, and typically work fifty (50) to seventy (70) hours per workweek, and even more during holiday periods.

36. According to the Consignment Agreements, Sales Development Associates are under the direct supervision and control of Defendant's employees. Defendant's employees supervise the work duties of Plaintiff and other members of the FLSA Collective and Ohio Class to make sure their job performance is of sufficient quality as determined by Defendant.

37. Defendant conducts initial interviews and intense vetting procedures for Sales Development Associates and hires Sales Development Associates at the sole discretion of Pepperidge Farm.

38. Pepperidge Farm disciplines Sales Development Associates through five-day letters. Defendant can take away at their discretion an Associates route if they get three or more five-day letters in a fiscal quarter. Defendant's disciplinary practices evidence the control an employer has over an employee.

39. Among other things, as a result of the requirements imposed by Defendant, Sales Development Associates are limited in their ability to work for other companies or operate independent businesses or it is impracticable to do so. Because of Defendant's policies and the nature of Sales Development Associates' employment and work duties, Sales Development Associates are unable to have other means of full-time employment. Sales Development Associates' work for Pepperidge Farm regularly consumes more than the normal 40-hour workweek of full-time employees.

40. Pepperidge Farm interviews, supervises, dispatches, directs, disciplines, reprimands, and performs other duties of an employer. Pepperidge Farm performs functions associated with that of an employer with regard to an employee. For example, Pepperidge Farms employs market sales leaders, zone managers, and ultimately regional managers to interact with and control its Sales Development Associates.

41.     Most onerously, Defendant manages Sales Development Associates through its stale percentage policy. The stale policy is determined arbitrarily and unilaterally by Pepperidge Farm, and states how much stale or damaged product Pepperidge Farm will allow each Sales Development Associate to return for credit. If an Associate does not meet the stale percentage, the Associate will be charged back for the stale overage. Pepperidge Farm routinely threatens to alter or revoke stale percentages as a means of control of its Sales Development Associates.

### Pepperidge Farm's Failure to Pay
### Overtime Compensation

42.     Plaintiff and members of the FLSA Collective and Ohio Class frequently worked more than forty (40) hours in a single workweek.

43.     The FLSA required Defendant to pay Sales Development Associates overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty (40) hours in a workweek. 29 U.S.C. §§ 206, 207.

44.     However, Pepperidge Farm, having unlawfully misclassified Plaintiff and members of the FLSA Collective and Ohio Class as "independent contractors," failed to pay them overtime compensation.

45.     During their employments with Defendant, Plaintiff and other members of the FLSA Collective and Ohio Class were required to work overtime, more than forty (40) hours per workweek.

46.     The FLSA and Ohio law required Defendant to pay overtime compensation to their employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty (40). 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

47.     Defendant failed to pay Plaintiff and other members of the FLSA Collective and Ohio Class overtime compensation at one and one-half times their "regular rate" for all hours

8

worked in excess of forty (40) hours in a workweek. Defendant, having unlawfully misclassified Plaintiff and other members of the FLSA Collective and Ohio Class as "independent contractors," failed to pay Sales Development Associates overtime compensation in violation of the FLSA and Ohio Wage Law.

48. Although Defendant suffered and permitted Plaintiff and other members of the FLSA Collective and Ohio Class to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff and other members of the FLSA Collective and Ohio Class overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff and other members of the FLSA Collective and Ohio Class were not paid overtime for their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq.*, and Ohio law.

### Defendant's Record Keeping Violations

49. Defendant Pepperidge Farm failed to make, keep and preserve complete and accurate records of Plaintiff and other members of the FLSA Collective and Ohio Class sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by the FLSA and Ohio law.

50. The FLSA and Ohio law required Defendant to maintain accurate and complete records of employees' time worked and amounts paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time

earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2. Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

51. Defendant failed to keep accurate records of hours worked. Thus, Defendant did not record or pay all hours worked in violation of the FLSA and Ohio law.

### The Willfulness of Defendant's Violations

52. Defendant knew that Plaintiff and other members of the FLSA Collective and Ohio Class were entitled to minimum wage and overtime compensation under federal and state law or acted in reckless disregard for whether they were so entitled.

53. The above practices and policies resulted in overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. Chapter 4111.

### COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

55. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

56. The FLSA Collective consists of:

All current and former Sales Development Associates and other workers with similar job titles or positions who worked for Defendant during the period of three years preceding the commencement of this action to the present.

57. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all should have been classified as non-exempt employees of Defendant, all were subjected to and injured by Defendant's unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty (40) hours per workweek, and all have the same claims against Defendant for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

58. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

59. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of over 40 persons. Such persons are readily identifiable through the payroll and personnel records Defendant has maintained, and was required to maintain, pursuant to the FLSA and regulations thereunder that have the force of law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

## CLASS ACTION ALLEGATIONS

60. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

61. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under the laws of the State of Ohio (the "Ohio Class"), defined as:

> All current and former Sales Development Associates and other workers with similar job titles or positions who worked for Defendant during the period of two years preceding the commencement of this action to the present.

11

62. The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of over 40 persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant has maintained, and was required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

63. There are questions of law or fact common to the Ohio Class, including but not limited to:

> Whether Defendant's conduct as described above violates Ohio law governing payment of overtime compensation;
>
> Whether Defendant misclassified Plaintiff, other Sales Development Associates, and other workers with similar job titles or positions as independent contractors; and
>
> Whether Defendant denied employees overtime compensation under Ohio law where, among other things, Sales Development Associates were not paid at least one and one-half times their "regular rate" for all hours worked in excess of forty hours in each workweek.

64. Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other class members.

65. Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

66. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

68. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

69. Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of himself and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

70. The FLSA requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

71. Plaintiff and other members of the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

13

72. Defendant did not pay overtime compensation to Plaintiff and the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours.

73. By engaging in the above-described practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

74. As a result of Defendant's violations of the FLSA, Plaintiff and the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Overtime Violations)

75. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

76. Plaintiff brings this claim for violation of the Ohio overtime compensation statute, O.R.C. § 4111.03 on behalf of himself and other members of the FLSA Collective and Ohio Class.

77. At all times relevant, Defendant was an employer covered by the Ohio overtime compensation statute, O.R.C. § 4111.03.

78. Defendant's failure to compensate overtime hours violated the Ohio overtime compensation requirements set forth in O.R.C. § 4111.03.

79. These violations of Ohio law injured Plaintiff and other members of the FLSA Collective and Ohio Class in that they did not receive wages due to them pursuant to that statute.

80. Having injured Plaintiff and other members of the FLSA Collective and Ohio Class, Defendant is "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] and for costs and reasonable attorney's fees as may be allowed by the court " under Ohio law. O.R.C. § 4111.10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C. Enter judgment against Defendant, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class;

D. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount; and

E. Award Plaintiff compensatory and punitive damages, his costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

*Respectfully submitted,*

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221 | F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)